**Barney BRUNELLI, Plaintiff,**

v.

**David MATHEWS, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 75 M 897.**

United States District Court, D. Colorado.

Sept. 24, 1976.

Luis A. Lopez, Trinidad, Colo., for plaintiff.

Jerre W. Dixon, Asst. U. S. Atty., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This matter is before the Court pursuant to 30 U.S.C. § 923 and 42 U.S.C. § 405(g), for judicial review of the Secretary's decision denying Black Lung Benefits to Barney Brunelli, a retired coal miner. (Title IV, Section 412(a) of the Federal Coal Mine Health and Safety Act of 1969, as amended). The administrative record has been filed, briefs are submitted, and the issues are ready for disposition.

The plaintiff was employed in the nation's coal mines for a period in excess of thirty years. Such employment terminated in 1960 due to the closing down of the mine at which he worked. Upon recall in 1961, he failed the physical examination and was refused a job. Thereafter, he was employed as a truck driver and held various odd jobs until he ceased work entirely due to ill health in 1966.

Plaintiff testified that his breathing difficulty began in 1948, at which time he was working as a coal digger. His worsening condition necessitated reassignment by the company to progressively less arduous jobs in subsequent years. Uncontroverted evidence was adduced that Mr. Brunelli has long suffered shortness of breath, wheezing, chronic coughing, extreme susceptibility to colds, and excessive fatigue. Both the plaintiff and his wife testified to Mr. Brunelli's discomfort when sleeping in a prone position. Mrs. Brunelli noted that her spouse's respiratory condition had grown progressively severe over the last fifteen years.

The relevant medical evidence derives from tests administered from 1970 to 1974, and consists of several X-rays, two ventilatory studies, two blood-gas studies and physical examination reports. The X-rays and the first ventilatory test revealed no evidence of pneumoconiosis or other pulmonary condition. The second ventilatory test, administered on September 10, 1974, produced a reading indicative of "chronic respiratory or pulmonary disease."[1]  20 C.F.R. § 410.490(b)(1)(ii). Additionally, both of the blood-gas studies, dated September 10, 1974 and December 17, 1974, reflected numerical values evidencing the existence of a totally disabling respiratory impairment. 20 C.F.R. Part 410, Subpart D Appendix. A medical report signed by a Dr. Schwyzer, the claimant's attending physician, indicated the existence of a heart condition caused by "myocardial conduction defect with atrial flutter and an atrioven-

---

1. The administrative law judge indicated that he considered "all the evidence in this case within the purview [of the regulatory criteria]."

However, no specific mention was made of this second ventilatory test in the opinion.

tricular block." During a subsequent examination, conducted by a Dr. Jimenez, claimant was diagnosed as having arteriosclerotic heart disease and osteo arthritis.

Upon the foregoing lay testimony and medical evidence, the administrative law judge concluded that Mr. Brunelli was not totally disabled due to pneumoconiosis or other chronic respiratory impairment. Accordingly, the claimant was held not to be entitled to benefits under the Act.

The administrative law judge acknowledged the positive results of the two blood-gas studies made in 1974 and the uncontroverted oral testimony of the plaintiff and his spouse. He concluded, however, that "[t]he other relevant medical evidence in this case, including X-ray, pulmonary function study and physical examinations, negates a finding of pneumoconiosis or the presence of a chronic respiratory or pulmonary disease . . . . The administrative law judge, therefore, finds that the other relevant evidence rebuts the findings of the blood-gas studies." Such an analysis misapprehends the effect of statutory and regulatory presumptions arising from the blood-gas studies and other evidence produced by the plaintiff. For reasons set forth below, it is my conclusion that the administrative law judge's finding of non-entitlement is unsupported by substantial evidence and must be reversed.

Plaintiff's blood-gas studies give rise to a presumption, assuming the existence of pneumoconiosis, that such pneumoconiosis is of a totally disabling nature. Part 410, Subpart D Appendix; § 410.424. Plaintiff's other evidence, indicating the existence of a chronic respiratory or pulmonary impairment, presumes the presence of pneumoconiosis in a miner having had fifteen years of mine employment. § 410.414(b)(1). Taken together, Subpart D Appendix and § 410.414 give rise to a rebuttable presumption that Mr. Brunelli suffers total disablement due to pneumoconiosis. The presumption can be rebutted only upon a showing by the Secretary that (1) the miner does not have pneumoconiosis; or, (2) his respiratory or pulmonary impairment is not mine-related. § 410.414(b)(2).

No suggestion was made in the record that the plaintiff's respiratory condition was causally unrelated to his thirty years of coal mining. As to an affirmative showing of the non-existence of pneumoconiosis, the proof was insufficient. The negative findings of the radiologists who examined the X-rays clearly cannot be relied upon to rebut the presumption. A positive X-ray would have dispensed with the need for the presumption at the outset. *Ansel v. Weinberger,* 529 F.2d 304 (6th Cir. 1976). The non-conclusiveness of a negative roentgenogram is borne out by the regulations themselves, which preclude a denial of benefits on that basis alone. § 410.414(c). Similarly, the presumption cannot be rebutted by proof that pneumoconiosis was not established by a pulmonary function study. *Ansel v. Weinberger, supra; Wilkins v. Mathews,* 75–F–858 (D.Colo. Mar. 25, 1976). The regulations dealing with pulmonary function levels do not purport to demonstrate the non-existence of pneumoconiosis in the event the critical levels are exceeded. Moreover, it is explicitly stated that a qualifying respiratory impairment can exist notwithstanding normal X-ray and ventilatory function tests. § 410.490(a).

The final evidentiary basis for the administrative law judge's finding of no disabling pneumoconiosis was the medical evidence that plaintiff suffered from heart disease. While this tends to establish the existence of a distinct medical infirmity suffered by Mr. Brunelli, it can hardly be considered proof of the non-existence of an incapacitating pulmonary impairment. Without explanation or further development, the administrative law judge concluded that the plaintiff's "disability is due to an arterio sclerotic heart disease, osteo arthritis and back condition, rather than pneumoconiosis." I cannot agree that the absence of a diagnosis of pneumoconiosis upon physical examination is sufficient to establish affirmatively "that the miner did not have pneumoconiosis," and thereby rebut the

presumption given effect by other medical proof. No medical opinion was offered to the effect that Mr. Brunelli did not have pneumoconiosis.

The text of the opinion suggests that the trial examiner's decision was based on a conclusion that the totality of the evidence failed to support a finding of pneumoconiosis. Instead, the focus should have been directed to whether the Secretary had come forth with evidence sufficient to rebut the presumption of eligibility that had arisen. It is my conclusion that such evidence was not produced.

Finally, the Secretary contends that the blood-gas tests are irrelevant to the period under consideration since they were administered on a date subsequent to the expiration of H.E.W.'s jurisdiction over black lung claims, June 30, 1973. I agree that § 415 of the amended Act mandates a finding that disabling pneumoconiosis existed prior to that date under a claim filed with the Department. However, it is clear from the record that the blood-gas studies, dated September, 1974 and December, 1974, were given full consideration by the administrative law judge in his determination. I take this to reflect an implicit finding that, given the slowly developing nature of the disease and the difficulty of scientific detection, this subsequent medical proof was probative to the issue of a pre-existing condition under the facts of the case. See, *Collins v. Weinberger,* 401 F.Supp. 377 (W.D. Va.1975).

Mr. Brunelli filed his application for benefits in May of 1970. More than six years have now elapsed without a final resolution of the matter. While under ordinary circumstances the Court would remand to the Secretary for a determination of the first month of entitlement to benefits, such adherence to procedural form—with its attendant delay—would work an extreme injustice to the plaintiff in this case.

A miner is entitled to monthly benefits commencing the first month in which he became totally disabled due to pneumoconiosis. §§ 410.202; 410.201. It is impossible to ascertain from the record the precise date at which Mr. Brunelli became so disabled. However, it can be determined, in view of the implicit finding that the critical blood-gas studies related back as evidence of a condition existing prior to the H.E.W. jurisdictional cut-off date, that Mr. Brunelli's eligibility arose at a time no later than June, 1973.

Upon the foregoing, it is my finding and conclusion that the decision of the administrative law judge is not and cannot be supported by substantial evidence. I further find that no purpose would be served by remanding this case for further proceedings, and that it would be unjust for plaintiff to be confronted with further delay. It is therefore

ORDERED that the decision of the Secretary is reversed and that plaintiff is declared eligible, from June, 1973, for benefits under the Act, 30 U.S.C. § 921 *et seq.*; and

FURTHER ORDERED that the Secretary process plaintiff's application accordingly and take such action as is necessary and consistent with this opinion; and

FURTHER ORDERED that the amount of attorney's fee awarded herein is $500.00. Costs to be taxed.